**Jerome SILO on his own behalf and on behalf of all other similarly situated**

**v.**

**CITY OF PHILADELPHIA, Edgar Campbell, Hon. Edward Bradley, and John or Jane Doe.**

**Civ. A. No. 82–1060.**

United States District Court,
E.D. Pennsylvania.

Aug. 29, 1984.

Jerome Silo, pro se.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Jerome Silo sought to commence this action on March 8, 1982, by filing a complaint on behalf of himself and a class of inmates of Holmesburg Prison. The gravamen of the complaint is that various officials of the Philadelphia Court of Common Pleas conspired to mislay court papers filed by Mr. Silo and his fellow plaintiff prisoners. Along with his complaint, Mr. Silo filed a petition to proceed *in forma pauperis*. This matter was originally assigned to Judge Ditter, who referred the petition to proceed *in forma pauperis* to Magistrate Naythons. On July 8, 1982, Magistrate Naythons filed a report and recommendation. He recommended that Judge Ditter grant the petition to proceed *in forma pauperis*, but dismiss as frivolous (a) all claims against one defendant, Hon. Edward J. Bradley, President Judge of the Philadelphia Court of Common Pleas, and (b) the claims under 42 U.S.C. §§ 1985 and 1986 against all other defendants. On July 19, 1982, one day late, Mr. Silo filed objections to Magistrate Naythons' report and recommendation.

Before Judge Ditter could decide whether to approve Magistrate Naython's report

and recommendation, Chief Judge Luongo reassigned this matter to me as related to *Non-Punitive Segregation Inmates of Holmesburg Prison v. Lyons*, Civil Action No. 80–159 (E.D.Pa. filed Jan. 11, 1980). Order of Chief Judge Luongo (Nov. 12, 1982). On November 19, 1982, Mr. Silo filed a motion to vacate Chief Judge Luongo's November 12 reassignment Order. Mr. Silo has also filed a motion to be relieved of "unfavorable judgments" pursuant to Federal Rule of Civil Procedure 60(b).

Through an unfortunate administrative oversight—an oversight which seems particularly ironic in the light of Mr. Silo's claim—I was not made aware of the pendency of this action, Magistrate Naythons' report, and Mr. Silo's motions, until this court's very capable staff attorney, Pamela McKee, Esq., uncovered the dormant file last month. I have now become familiar with this matter and will address the pending motions.

In this action, Mr. Silo alleges that an employee in the office of the Clerk of Quarter Sessions of the Philadelphia County Court of Common Pleas wrongfully misplaced or destroyed a petition filed by Mr. Silo on behalf of himself and several other inmates of Holmesburg Prison pursuant to a policy or practice of the Court of Common Pleas and the City of Philadelphia. Mr. Silo allegedly sought to file this petition in the state court action of *Jackson v. Hendrick*, No. 2437, Feb. Term 1971 (Pa. C.P., Phila. County, filed Feb. 1971), which established the rights of certain inmates at Holmesburg. Mr. Silo complains that the Clerk of Quarter Sessions (Edgar Campbell), the Clerk's employee (John or Jane Doe), the President Judge of the Philadelphia Court of Common Pleas (Edward Bradley), and the City of Philadelphia have acted concertedly to deprive Mr. Silo and other *pro se* prisoner litigants of various constitutional rights by adopting a policy of mishandling *pro se* court filings.

1. *Motion to Vacate Order of November 12, 1982*

Before turning to the question whether Mr. Silo may proceed *in forma pauperis*, I

must first resolve the issue raised by Mr. Silo's motion to vacate Chief Judge Luongo's Order reassigning this case from Judge Ditter to me. I cannot consider the substance of that motion unless I determine that I—rather than the Chief Judge or Judge Ditter—am the proper judge to consider that substance.

Mr. Silo's motion to vacate Chief Judge Luongo's Order does not contest the relation between this matter, No. 82–1060, and *Non-Punitive Segregation Inmates*, No. 80–159. Had he contested that relation, it is strongly arguable that Chief Judge Luongo, and not I, should rule on Mr. Silo's motion to vacate. However, Mr. Silo admits the relatedness of the two cases, but contests the reassignment on the basis of allegations that I have a "conflict of interest" arising out of developments in No. 80–159 which would preclude my impartial adjudication of No. 82–1060.

Assuming *arguendo* the truth of Mr. Silo's allegations, they do not call into question the propriety of Chief Judge Luongo's Order of reassignment. That Order was a proper implementation of Local Rule of Civil Procedure 3(c)(2), which is mandatory. "If the Chief Judge determines that the cases are related, he *shall* transfer the later case to the judge to whom the earlier case is assigned ...." E.D.Pa.R.Civ.P. 3(c)(2) (emphasis added). Since Mr. Silo acknowledges that No. 82–1060 is related to No. 80–159, it is manifest that the reassignment Order was proper. *See MacKenzie v. Anstine,* 102 F.R.D. 794 (E.D. Pa.1984).

■ Thus, properly considered, Mr. Silo's motion addresses not the propriety of reassignment, but my fitness to handle this

case. Accordingly, I shall consider the motion as a petition for recusal. A petition for recusal is properly presented in the first instance to the judge who is being asked to recuse himself.

■ Mr. Silo predicates his challenge to my impartiality upon an affidavit of December 26, 1980, which he filed in No. 80–159, and upon a colloquy which I had with him on March 29, 1982. Neither event warranted my recusal in No. 80–159.[1] Neither event warrants my recusal here. It is true that, on the basis of my extended acquaintance with No. 80–159, I have formed an impression of Mr. Silo's litigating style. I have formed that impression in the same way that I have formed impressions—both positive and negative—of attorneys who regularly practice at this bar. I have not permitted my impressions of attorneys to color my evaluations of attorneys' clients' causes. Similarly, I will not permit my impression of Mr. Silo to color my evaluation of the cause that he presents here. The accompanying Order, then, denies Mr. Silo's motion to vacate Chief Judge Luongo's reassignment Order of November 12, 1982.

## 2. *Petition to Proceed In Forma Pauperis*

Mr. Silo has filed a proper petition to proceed *in forma pauperis* supported by an adequate affidavit. *See* 28 U.S.C. § 1915(a). The accompanying Order therefore grants Mr. Silo's petition. However, section 1915(d) requires dismissal of a complaint filed *in forma pauperis* if the court is "satisfied that the action is frivolous ...." 28 U.S.C. § 1915(d).

1. Mr. Silo's affidavit dated December 26, 1980, was filed in No. 80–159 on January 8, 1981. That affidavit purported to support a *pro se* petition for reconsideration of my Memorandum and Order of October 30, 1980, granting defendants' motion for summary judgment on certain claims in No. 80–159. While that affidavit refers to the events upon which Mr. Silo has predicated this action, the affidavit only strengthens the conclusion that No. 82–1060 is related to No. 80–159. Mr. Silo's affidavit provides no basis for recusal.

The March 29, 1982, colloquy took place over the telephone during the trial in No. 80–159. Mr. Silo had refused to appear for trial. I offered to permit him to testify by telephone. Mr. Silo refused. The notes of that telephone colloquy have not been transcribed. However, my recollection of that colloquy does not include any matters which would provide a basis for a recusal.

Since 1982, when Magistrate Naythons filed his report and recommendation, there have been substantial developments in the case law relevant to Mr. Silo's claims. Nonetheless, I have reached conclusions largely, although not entirely, congruent with the Magistrate's. I disagree with the Magistrate in that he recommended dismissal of all claims against Judge Bradley whereas I conclude that certain of those claims are not subject to dismissal on the pleadings.

Mr. Silo seeks to bring this action under several sections of the Civil Rights Act of 1871. Specifically, Mr. Silo alleges that the City of Philadelphia, the Clerk of Quarter Sessions of the Court of Common Pleas of Philadelphia County, the President Judge of that court, and an unknown employee in the Clerk's Office of that court are liable to him under 42 U.S.C. §§ 1983, 1985, 1986. I find that the section 1985 and 1986 claims are frivolous. But I find that certain aspects of the section 1983 claims are not—namely those alleging (a) unconstitutional deprivation of Mr. Silo's right of access to the state courts and (b) discrimination against Mr. Silo in violation of the equal protection clause of the Fourteenth Amendment. I will grant Mr. Silo a brief period properly to replead his allegations that the defendants have a policy of mishandling *pro se* petitions in the Court of Common Pleas. If, after that period, Mr. Silo has not alleged a policy or practice with sufficient particularity, I will dismiss all defendants with the exception of the unknown employee of the Office of the Clerk of Quarter Sessions.

### a. *Section 1985*

Section 1985 codifies section 2 of the Civil Rights Act of 1871. *See generally, Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). It provides a private right of action for a variety of different torts. Mr. Silo has not made clear which clause of section 1985 he believes grants him a right of action for the wrongs that he has alleged.

Section 1985(1) clearly does not apply to the asserted mishandling of Mr. Silo's petition in *Jackson.* Section 1985(1) pertains only to interference with officers of the United States. Mr. Silo has not alleged that he is an officer of the United States. Therefore, section 1985(1) is inapposite.

The first clause of section 1985(2) creates a claim for conspiracy to intimidate witnesses, jurors, or parties in a federal case. Mr. Silo has alleged that the mishandling of his *Jackson* petition interfered with his prosecution of *Non-Punitive Segregation Inmates of Holmesburg Prison v. Lyons,* Civil Action No. 80–159 (E.D.Pa. filed Jan. 11, 1980). However, Mr. Silo has not alleged that two or more individuals in the Clerk of Quarter Sessions' Office conspired with an intent to bring about the alleged interference with the progress of No. 80–159. Mr. Silo merely alleges that the Clerk of Quarter Sessions, or his office, mishandled Mr. Silo's petition in order to deprive him of access to the Court of Common Pleas. Moreover, Mr. Silo allegedly attempted to file his petition in *Jackson* several months before filing his complaint in this court. Accordingly, Mr. Silo does not state a claim under the first clause of section 1985(2).

Mr. Silo similarly does not state a claim under either the second clause of section 1985(2) or section 1985(3). Section 1985(3) creates a claim for conspiracy to deprive an individual of equal rights or certain enumerated civil rights. The second clause of section 1985(2) creates a claim for conspiracy to hinder "the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...."

The Supreme Court has held that a claim under section 1985(3) requires allegation of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action ...." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Our Court of Appeals has held that this requirement also applies to a claim under the second clause of section 1985(2).

*Brawer v. Horowitz,* 535 F.2d 830, 840 (3d Cir.1976). The Supreme Court has recently held that no such animus must be alleged in a claim under the first clause of section 1985(2), but the Court expressly contrasted the first clause of section 1985(2) with the second clause. *Kush v. Rutledge,* 103 S.Ct. at 1487. The Court noted that the first clause of section 1985(2) did not contain the language common to section 1985(3) and the second clause of section 1985(2) "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Id.* Thus, the authority of *Brawer* appears to have been strengthened by *Kush. See Miller v. Indiana Hospital,* 562 F.Supp. 1259, 1281–1282 (W.D.Pa. 1983).

The Supreme Court has adopted a strict view of the conspiracies subject to section 1985(3) or the second clause of section 1985(2). The Court has explained that its *Griffin* formulation—a "racial, or perhaps otherwise class-based, invidiously discriminatory animus"—refers to a motivation of concern to the drafters of the Civil Rights Act of 1871. And this in turn seems to mean that sections 1985 (2) and (3) only grant rights of action to victims of racially motivated conspiracies: minorities and their political supporters. *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, ——, 103 S.Ct. 3352, 3359, 77 L.Ed.2d 1049 (1983); *see also Nilan v. De-Meo,* 575 F.Supp. 1225 (E.D.Pa.1983). *Pro se* petitioners in state court are not a class subject to the Civil Rights Act's protection.

For these reasons, Mr. Silo's complaint does not state a claim under 42 U.S.C. § 1985.

### b. *Section 1986*

■ A viable claim under 42 U.S.C. § 1986 takes as its predicate the allegation of facts sufficient to support a claim under section 1985, albeit not necessarily against the same defendants. Section 1986 creates a right of action for failure to prevent a wrong mentioned in section 1985. Mr. Silo

has alleged no wrong actionable under section 1985. Consequently, he has stated no claim under section 1986.

### c. *Section 1983*

■ 42 U.S.C. § 1983 creates a private right of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights privileges, or immunities secured by the Constitution and laws ...." Mr. Silo has adequately alleged that the Clerk of Quarter Sessions or someone in his office acted in his or her official capacity and therefore "under color" of state law. Mr. Silo's section 1983 claims are not frivolous, then, if he has properly alleged a violation of his federal rights.

Mr. Silo begins with a series of claims arising under the due process clause of the Fourteenth Amendment. He claims that he has suffered a deprivation of "access to the courts, and unlawful 'CONTENT-BASED–CENSORSHIP' of PETITION–SPEECH, [and] unlawful interference with the right to petition to government for redress of grievance ...." Complaint ¶ 29 (capitalization in original). His censorship claim is frivolous. Mr. Silo's complaint alleges that the Clerk of Quarter Sessions' Office failed properly to handle a court petition. This does not state a claim of deprivation of Mr. Silo's right to free speech.

Mr. Silo's claim that the defendants have denied him access to the Court of Common Pleas, however, is not clearly frivolous. This right exists under the petition clause of the First Amendment as applied through the due process clause. *California Motor Transport Corp. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972). If the Common Pleas court refused systematically to accept filings from Mr. Silo, he would rather effectively be denied access to that court, in

violation of the due process clause and the petition clause.[2]

Mr. Silo also claims that the Clerk of Quarter Sessions has mishandled his petition intentionally because he is a *pro se* prisoner petitioner. He claims that the court treats such petitioners differently from all other petitioners and only loses filings from *pro se* prisoners. This states a claim for violation of the equal protection clause of the Fourteenth Amendment which is not clearly frivolous.

### d. *Proper Defendants*

Mr. Silo only alleges one incident of mishandling. The individual who mishandled his petition in *Jackson* is unknown to Mr. Silo. He identifies him or her only as John or Jane Doe. Mr. Silo alleges that the other defendants (the Clerk of Quarter Sessions, the President Judge, and the City of Philadelphia) are liable only in their supervisory or corporate capacities. He alleges this liability because "[i]t can be shown that it is the official policy of the City and Phila. Courts to act in a similar manner as described, herein, in regard to the record keeping or processing of prisoner *pro se* petitions." Complaint ¶ 31.

Only if such a policy exists can the City be held liable for John or Jane Doe's mishandling of Mr. Silo's petition. Only if they participated in the setting of that policy can Judge Bradley or Mr. Campbell be held liable. *See Pulliam v. Allen,* ─── U.S. ───, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Absent proof of such a policy, Mr. Silo has alleged only that Judge Bradley, Mr. Campbell, and the City are liable on a theory of *respondeat superior.* Section 1983 does not impose liability on this theory.

██ Mr. Silo has not alleged the policy of which he complains with more specificity than the above-quoted paragraph 31 of his complaint. This is not sufficient. "In this circuit, plaintiffs in civil rights cases are required to plead facts with specificity."

*Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922 (3d Cir.1976). Nevertheless, a remedy for a failure to plead a policy with adequate specificity is, in this district, typically a grant of time to substantiate the overly general pleading, rather than a dismissal. *See Durkin v. Bristol Township,* 88 F.R.D. 613, 616 (E.D.Pa.1980); *but see Shirey v. Bensalem Township,* 501 F.Supp. 1138 (E.D.Pa.1980).

For this reason, I will not dismiss the section 1983 claims for deprivation of equal protection or access to the courts against any of the defendants at this time. I will grant Mr. Silo a period of thirty days from the date of the accompanying Order to file an amended complaint in this action. This amended complaint should allege with particularity the facts underlying Mr. Silo's allegation of a. policy of the City and the Philadelphia Court of Common Pleas. If, at the end of thirty days, Mr. Silo has not adequately amended his complaint, I will dismiss all remaining claims based upon an allegation of a policy or practice to mishandle *pro se* prisoner plaintiffs' submissions to the Philadelphia Court of Common Pleas.

An appropriate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum:

1. Plaintiff's motion to vacate Chief Judge Luongo's Order of November 12, 1982, is DENIED.

2. Plaintiff's petition for leave to proceed *in forma pauperis* is GRANTED.

3. Plaintiff's claims under 42 U.S.C. §§ 1985, 1986 are DISMISSED AS FRIVOLOUS.

4. Plaintiff's claims under 42 U.S.C. § 1983 are DISMISSED AS FRIVOLOUS EXCEPT FOR plaintiff's claim that he has been denied equal protection of the laws

---

**2.** In light of *Hudson v. Palmer,* ─── U.S. ───, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), it may be that, absent proof of a policy, a single mishandling of a petition sought to be filed by Mr. Silo does not state a section 1983 claim against

any defendant. However, it seems the better course not to undertake to decide this question at this point, but to await its fuller presentation at a later point, if the question arises squarely.

and plaintiff's claim that he has been denied access to the courts of Pennsylvania.

5. Plaintiff SHALL HAVE thirty (30) days from the date of this Order to amend his complaint to allege with particularity the facts underlying the allegations of paragraph 31 of that complaint.